# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2437

_____

Jan Fallo; Pamela Epperson; Laura    *
Muehlan; Verne Anderson; Amy    *
Clark; Yulanda Diamond; Monica    *
Licklider; Latonya Love; Mary    *
McNurlin; Jessica Richardson;    *
Kisha Robinson; Patricia    *
Stuteville; Zach Green; Dene Beck;    *
Carrie Boyer; Jamika Brewer;    *
Yulanda Boyd; Kelly Brewster;    *
Kristeena Cloud; Jenna Edelen;    *
LaToya Hardin; Tameila Hardley;    *
Tynesha Hooker; Luctoine    *
Jean-Philippe; Barbara Johnson;    *   Appeal from the United States
DeAndre Johnson; Alonzo Jones;    *   District Court for the
Margie Kelley; Diane Mitchell;    *   Western District of Missouri.
Marina Paltsmakher; Lectura    *
Sanders; Deannia Sherman;    *
Lindsay Sims; Tammy Simsheuser;    *
Mary Surridge; Dawn Williams-    *
Kleoppel; Peggy Wilson; Linda    *
Womack,    *
   *
       Appellees,    *
   *
     v.    *
   *
High-Tech Institute,    *
   *
       Appellant.    *

_____

Submitted: January 13, 2009
Filed: March 24, 2009

_____

Before BYE, COLLOTON and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Thirty-eight current and former students filed suit against High-Tech Institute ("High-Tech").  High-Tech moved to compel arbitration, arguing that an arbitrator should determine whether the students' tort claims were within the scope of the arbitration provision in the students' enrollment agreements.  The district court held that it had the authority to determine the question of arbitrability, that the arbitration provision did not cover the students' tort claims, and that High-Tech's motion to compel arbitration should be denied.  High-Tech appeals, and for the reasons discussed below, we reverse.

## I.  BACKGROUND

On October 25, 2007, thirteen current and former students filed suit against High-Tech, a for-profit vocational school, in the Circuit Court of Jackson County, Missouri.  The complaint alleged that High-Tech engaged in fraudulent misrepresentation, violated the Missouri Merchandising Practices Act, negligently trained and supervised employees, and breached the enrollment agreement it had entered into with each student.  High-Tech removed the case to federal district court under 28 U.S.C. § 1332.  High-Tech then moved to compel arbitration pursuant to the arbitration clause contained in the enrollment agreement and to stay the judicial proceedings.  The arbitration clause in the enrollment agreement states:

> Any controversy or claim arising out of or relating to this Agreement, or breach thereof, no matter how pleaded or styled, shall be settled by

arbitration in accordance with the Commercial Rules of the American Arbitration Association at Kansas City, Missouri, and judgment upon the award rendered by the Arbitrator may be entered in any court having jurisdiction.

The enrollment agreement also contains a separate provision concerning governing law, which provides:

The laws of the State of Missouri shall govern this Agreement. Should the School institute proceedings for monies due from the Student for services provided, the Student shall pay all costs, including reasonable attorneys fees, court costs and collection fees, incurred by the School.

The district court granted in part and denied in part High-Tech's motion to compel arbitration, finding that the arbitration clause was not unconscionable and that the arbitration provision required only the students' breach of contract claim to be submitted to arbitration. The district court also stayed judicial proceedings pending the outcome of arbitration on the breach of contract claim. The students then voluntarily dismissed their breach of contract claim and filed an amended complaint, which added twenty-five plaintiffs and included only the three tort claims. High-Tech filed a second motion to compel arbitration and to continue the stay of judicial proceedings. High-Tech argued that the question of arbitrability should be determined by an arbitrator, rather than the district court, and, alternatively, that the arbitration provision requires arbitration of the tort claims.

The district court denied High-Tech's second motion, holding that it had the authority to decide the question of arbitrability because the parties did not clearly agree to leave the arbitrability issue to an arbitrator. The court then found that the arbitration provision did not compel arbitration of the students' three tort claims. High-Tech appeals, arguing that the district court erred in determining that it had the authority to decide the question of arbitrability. High-Tech also argues that even if

the district court correctly answered the question of arbitrability, it erred in finding that the arbitration provision did not cover the students' tort claims.

## II. DISCUSSION

We first address High-Tech's argument that the district court erred by determining that it had the authority to decide the threshold question of arbitrability of the students' tort claims. We review de novo a district court's decision to deny a motion to compel arbitration. *EEOC v. Woodmen of the World Life Ins. Soc'y*, 479 F.3d 561, 565 (8th Cir. 2007). "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (internal citations omitted). Courts should not find that parties agreed to arbitrate the question of arbitrability "[u]nless the parties clearly and unmistakably provide otherwise." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Thus, we must determine whether the parties to the enrollment agreement "clearly and unmistakably" intended for an arbitrator to determine the question of arbitrability.

The arbitration provision in the enrollment agreement states that disputes arising out of the enrollment agreement "shall be settled by arbitration in accordance with the Commercial Rules of the American Arbitration Association ['AAA Rules']." High-Tech argues that the provision's incorporation of the AAA Rules clearly and unmistakably demonstrates that the parties intended to arbitrate the question of arbitrability because Rule 7(a) of the AAA Rules provides that arbitrators determine their own jurisdiction.

We have not "directly addressed the effect of the AAA jurisdictional rule on arbitrability disputes." *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 701 (8th Cir. 2008). However, we have previously addressed the effect of

incorporating the National Association of Securities Dealers ("NASD") Code's jurisdictional rule. *FSC Secs. Corp. v. Freel*, 14 F.3d 1310, 1312-13 (8th Cir. 1994). Section 35 of the NASD Code, at issue in *FSC*, provides that arbitrators have the authority to "interpret and determine the applicability of all provisions under [the NASD] Code." *Id.* at 1312. This court held that the parties' incorporation of the NASD Code included an adoption of Section 35 and was a "'clear and unmistakable' expression of [the parties'] intent to leave the question of arbitrability to the arbitrators." *Id.* at 1312-13.

The act of incorporating Rule 7(a) of the AAA Rules provides even clearer evidence of the parties' intent to leave the question of arbitrability to the arbitrator than does the act of incorporating Section 35 of the NASD Code because Rule 7(a) expressly gives the arbitrator "the power to rule on his or her own jurisdiction." Consequently, we conclude that the arbitration provision's incorporation of the AAA Rules, like the incorporation of the NASD Code in *FSC*, constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator. *See FSC*, 14 F.3d at 1312. Most of our sister circuits that have considered this issue agree with our conclusion that an arbitration provision's incorporation of the AAA Rules—or other rules giving arbitrators the authority to determine their own jurisdiction—is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court. *See, e.g.*, *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 472-73 (1st Cir. 1989). *But see Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 780 (10th Cir. 1998) (finding that the parties did not specifically intend to submit the question of arbitrability to an arbitrator despite a reference to the AAA Rules in the arbitration provision).

The students raise several arguments in support of the district court's decision to deny High-Tech's motion to compel arbitration of their tort claims. First, the students argue that the arbitration provision is unconscionable and therefore unenforceable. Under Missouri law, "[u]nconscionability has two aspects: procedural unconscionability and substantive unconscionability." *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 858 (Mo. 2006). "Procedural unconscionability deals with the formalities of making the contract, while substantive unconscionability deals with the terms of the contract itself." *Id.*

The students contend that the arbitration clause is procedurally unconscionable because the arbitration provision appeared in fine print on the back of the contract, there was no negotiation between the parties concerning arbitration, and High-Tech was in a superior bargaining position. The enrollment agreement, however, consisted of a single sheet of paper printed on both sides that set out basic terms, such as tuition and other fees, course and graduation requirements, transferring and termination options, and refund and leave of absence policies. The arbitration provision was not hidden in unreadable fine print among these other terms. *See id.* (explaining that one aspect of procedural unconscionability includes "unreadable fine print"). Moreover, the students presented no evidence that High-Tech used high-pressure sales tactics to coerce them into signing the enrollment agreement. *See id.* Although High-Tech may have been in a superior bargaining position, the contract terms were clear, and a reasonable person could expect that disputes would be arbitrated. *See Swain v. Auto Servs., Inc.*, 128 S.W.3d 103, 107-08 (Mo. Ct. App. 2003). Therefore, we agree with the district court that the arbitration clause is not procedurally unconscionable. Because we find no procedural unconscionability, we need not reach the substantive unconscionability question. *See Whitney v. Alltel Commc'ns, Inc.*, 173 S.W.3d 300, 308 (Mo. Ct. App. 2005) ("Generally there must be both procedural and also substantive unconscionability before a contract or clause can be voided."); *cf. Kan. City Urology, P.A. v. United Healthcare Servs.*, 261 S.W.3d 7, 15 (Mo. Ct. App.

2008) (reversing the trial court's finding of unconscionability where it found only substantive unconscionability and not procedural unconscionability).

Next, the students contend that even if the arbitration provision is enforceable, the district court correctly determined that it had the authority to decide the question of arbitrability. The students argue that the governing law provision of the enrollment agreement requires the application of Missouri law, which states that a court must determine the question of arbitrability as a matter of law. *See Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. 2003). However, the Supreme Court has held that an arbitration provision's incorporation of the AAA Rules supersedes a choice-of-law provision contained in the same agreement. *Preston v. Ferrer*, 552 U.S. ---, 128 S. Ct. 978, 989 (2008) (explaining that the "'best way to harmonize' the parties' adoption of the AAA Rules and their selection of California law is to read the latter to encompass prescriptions governing the substantive rights and obligations of the parties, but not the State's 'special rules limiting the authority of arbitrators'" (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995))). Thus, the arbitration provision's incorporation of the AAA Rules supersedes Missouri law regarding the question of arbitrability.

Finally, the students argue that the governing law provision conflicts with the arbitration provision, thereby undermining the conclusion that the parties intended to authorize an arbitrator to determine the question of arbitrability. In particular, the students argue that the reference to "court costs" conflicts with a clear and unmistakable intent to arbitrate. However, after participating in arbitration, a party may seek to have the arbitrator's order confirmed, modified or vacated in a court, thereby incurring court costs. *See, e.g.*, *Crawford Group, Inc. v. Holekamp*, 543 F.3d 971, 976 (8th Cir. 2008). Thus, the governing law provision's reference to "court costs" is not inconsistent with a clear and unmistakable intent to arbitrate because it merely provides that High-Tech may recover court costs in the event that one of the parties files a post-arbitration action in court. *See Wildflower Cmty. Ass'n v.*

*Rinderknecht*, 25 S.W.3d 530, 534 (Mo. Ct. App. 2000) (explaining that "[e]ach provision [of a contract] is construed in harmony with the others to give each provision a reasonable meaning and avoid an interpretation that renders some provisions useless"). The students further contend that the governing law provision's statement that the "Student shall pay all costs, including reasonable attorneys fees" conflicts with AAA Rule 43. *See* AAA Rule 43(d)(ii) (providing that an arbitrator may award attorneys' fees in certain circumstances, including when authorized by the arbitration agreement). We see no conflict between the governing law provision and AAA Rule 43(d)(ii) because the enrollment agreement in this case contains the arbitration clause and expressly authorizes an award of attorneys' fees. Thus, the governing law provision does not undermine our conclusion that the parties had a clear and unmistakable intent to arbitrate.

We find that the district court erred when it held that it had the authority to determine the question of arbitrability because the parties' incorporation of the AAA Rules is clear and unmistakable evidence that they intended to allow an arbitrator to answer that question.[1] Accordingly, we conclude that the district court erred in denying High-Tech's motion to compel arbitration and to continue the stay of judicial proceedings. *See* 9 U.S.C. § 3 (stating that a court "shall on application of one of the parties stay the trial of the action until . . . arbitration has been had in accordance with the terms of the agreement").

## III. CONCLUSION

For the foregoing reasons, we reverse and remand to the district court with instructions to enter an order granting High-Tech's motion to compel arbitration and continue the stay of judicial proceedings.

_____

[1]As a result, we need not reach High-Tech's alternative argument that the district court erred in finding that the students' tort claims were not within the scope of the arbitration provision.