**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1123**

SIMPLY WIRELESS, INC,

Plaintiff – Appellant,

v.

T-MOBILE US, INC, f/k/a T-Mobile USA, Inc.; T-MOBILE USA, INC.,

Defendants – Appellees.

**No. 16-1166**

SIMPLY WIRELESS, INC,

Plaintiff – Appellant,

v.

T-MOBILE US, INC, f/k/a T-Mobile USA, Incorporated; T-MOBILE USA, INCORPORATED,

Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:15-cv-01390-CMH-JFA)

Argued:  September 14, 2017                    Decided:  December 13, 2017

Before WYNN, FLOYD, and HARRIS, Circuit Judges.

Affirmed by published opinion. Judge Wynn wrote the majority opinion, in which Judge Harris joined. Judge Floyd wrote a dissenting opinion.

**ARGUED:** Sean Patrick Roche, CAMERON MCEVOY, PLLC, Fairfax, Virginia, for Appellant. Joseph Mark Lipner, IRELL & MANELLA LLP, Los Angeles, California, for Appellees. **ON BRIEF:** Robert A. Rowan, Sheryl L. De Luca, NIXON & VANDERHYE P.C., Arlington, Virginia, for Appellant. Charles B. Molster, III, WINSTON & STRAWN LLP, Washington, D.C.; Ellisen S. Turner, Adam M. Shapiro, IRELL & MANELLA LLP, Los Angeles, California, for Appellees.

WYNN, Circuit Judge:

Plaintiff Simply Wireless, Inc. ("Simply Wireless") appeals from an order of the United States District Court for the Eastern District of Virginia dismissing its complaint against Defendants T-Mobile US, Inc. and T-Mobile USA, Inc. (collectively, "T-Mobile"). Upon determining that the parties' business relationship was governed by a written agreement containing a mandatory arbitration clause, the district court went on to determine that the scope of that arbitration clause included all of Simply Wireless's claims against T-Mobile.

We conclude that the district court erred in determining the scope of the parties' arbitration clause, as the parties clearly and unmistakably intended for an arbitrator—not the court—to resolve all arbitrability disputes. Nonetheless, because the parties intended for an arbitrator to resolve all arbitrability disputes, the district court's ultimate dismissal of Simply Wireless's complaint in favor of arbitration was proper. Accordingly, we affirm the district court's dismissal on alternate grounds.

I.

We review a grant of a motion to dismiss a complaint by taking the facts in the light most favorable to the plaintiff. *Cruz v. Maypa*, 773 F.3d 138, 141 (4th Cir. 2014).

Simply Wireless sells cellular telephone goods and services to consumers and provides advertising, marketing, and distribution services to other businesses in the telecommunications industry. Simply Wireless is the registered owner of multiple

3

trademarks using the name SIMPLY WIRELESS.[1]  According to the complaint, Simply Wireless is also the originator and owner of the trademark SIMPLY PREPAID in connection with the sale of cellular telephone goods and services.  Since 2002, Simply Wireless has sold hundreds of thousands of prepaid phone cards in connection with the SIMPLY PREPAID trademark, and it has used that mark to promote and market the goods and services of other telecommunications providers.

T-Mobile also provides cellular services.  Although T-Mobile and Simply Wireless compete in the same industry, they have partnered on several projects since at least 2003.  Pertinent to this appeal, on July 12, 2012, T-Mobile and Simply Wireless partnered on a project by executing a contract entitled "Amended & Restated Limited Purpose Co-Marketing and Distribution Agreement for Equipment Sold th[r]ough HSN & QVC" (the "HSN/QVC Agreement").  S.J.A. 502.  The HSN/QVC Agreement allowed Simply Wireless "to use T-Mobile's experience, Confidential Information, Marks[2] and goodwill to promote, market and sell T-Mobile's Wireless Service and Equipment to Subscribers through [HSN and QVC] for various on-air promotions, . . . subject to the terms and conditions of this Agreement."  *Id*.  The HSN/QVC Agreement included several provisions protecting T-Mobile's trademarks:

---

[1] For clarity, all marks at issue in this case appear in capital letters (e.g., "SIMPLY WIRELESS"), while "Simply Wireless" refers to the plaintiff-appellant.

[2] "Marks," as defined in the HSN/QVC Agreement, include "[a]ll service marks, trademarks and trade names sublicensed to T-Mobile . . . and all service marks, trademarks and trade names owned by T-Mobile."  S.J.A. 503.

4

18.1. Marks. [Simply Wireless] acknowledges that the Marks, along with all Intellectual Property Rights associated therewith are the property of T-Mobile.

. . . .

18.5. Protection of T-Mobile Rights. [Simply Wireless] shall immediately notify T-Mobile of any infringement, misappropriation, or violation of any Marks and/or Intellectual Property Rights of T-Mobile . . . that comes to [Simply Wireless's] attention. [Simply Wireless] *shall not infringe or violate, and shall use its best efforts to preserve and protect T-Mobile's . . . interest in, all such Marks and Intellectual Property Rights.*

S.J.A. 513–14 (emphasis added). It also included an arbitration clause that provided, in pertinent part:

19.1.1. Submission to Arbitration. *Any claims or controversies . . . arising out of or relating to* this Agreement ("Dispute") shall be resolved by submission to binding arbitration. The arbitration shall be administered and hearings shall be held in Seattle, Washington before a single neutral arbitrator from the offices of Judicial Arbitration & Mediation Services. *The arbitration shall be administered pursuant to the JAMS Comprehensive Rules and Procedures then in effect. . . .* Notwithstanding any choice of law provision in this Agreement, the parties agree that the Federal Arbitration Act, 9 U.S.C. §§ 1–15, not state law, shall govern the arbitrability of all disputes under this Agreement.

S.J.A. 514 (emphasis added).

Over two years after the execution of the HSN/QVC Agreement, in August and September 2014, T-Mobile filed several trademark applications with the United States Patent and Trademark Office ("USPTO") to trademark SIMPLY PREPAID. At the same time, T-Mobile commenced use of SIMPLY PREPAID in connection with its products and services.

In March 2015, Simply Wireless filed with the USPTO Trademark Trial and Appeal Board (the "Trademark Board") a Notice of Opposition to all of T-Mobile's

SIMPLY PREPAID trademark applications. In response, T-Mobile filed an answer and asserted counterclaims seeking cancellation of Simply Wireless's various registrations of the SIMPLY WIRELESS trademark. During the subsequent proceedings before the Trademark Board, neither party demanded arbitration. Instead, both parties engaged in extensive discovery, with Simply Wireless producing over 30,000 pages of documents in response to discovery requests from T-Mobile.

In October 2015, Simply Wireless brought this action in federal court, seeking relief on five grounds: (1) trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; (2) trademark infringement under Va. Code. Ann. § 59.1-92.12; (3) unfair competition, passing off, trade name infringement, trademark infringement, and false designation of origin under Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a); (4) common law trademark infringement, trade name infringement, unfair competition, and passing off under the common law of the Commonwealth of Virginia; and (5) trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

Soon thereafter, T-Mobile filed a Notice of Intent to Seek Arbitration.[3] T-Mobile also moved to dismiss Simply Wireless's complaint on two separate grounds: First, T-Mobile argued that, based upon provisions in the HSN/QVC Agreement, Simply Wireless's failure to provide contractually required notice of its claims and to initiate

---

[3] T-Mobile also moved to suspend the ongoing proceedings before the Trademark Board pending the resolution of Simply Wireless's action against T-Mobile in district court. The Trademark Board granted T-Mobile's motion and has suspended the proceedings.

arbitration in a timely manner warranted dismissal with prejudice under Federal Rule of Civil Procedure 12(b)(6). Second, and alternatively, T-Mobile argued that the HSN/QVC Agreement's express incorporation of JAMS Comprehensive Rules and Procedures ("JAMS Rules") "clearly and unmistakably" endowed an arbitrator—as opposed to the court—with the authority to resolve all arbitrability disputes. Accordingly, T-Mobile asked the district court to dismiss the case without prejudice for an arbitrator to determine whether the dispute at issue falls within the scope of the HSN/QVC Agreement's mandatory arbitration provision.

In response, Simply Wireless principally argues, both below and now on appeal, that the various claims asserted in its complaint neither "arise out of" nor "relate to" the HSN/QVC Agreement. Therefore, according to Simply Wireless, its claims against T-Mobile are neither barred by the HSN/QVC Agreement nor subject to mandatory arbitration pursuant to the agreement.

On January 14, 2016, the district court issued a two-page order granting T-Mobile's motion to dismiss Simply Wireless's complaint. Notwithstanding T-Mobile's argument that the HSN/QVC Agreement expressly left questions of arbitrability to the arbitrator, the court concluded "that Plaintiff's claims are arbitrable because they fall within the scope of the [HSN/QVC Agreement]," and therefore dismissed the action without prejudice to allow the parties to pursue arbitration. J.A. 493. Simply Wireless timely appealed.

7

## II.

From the outset, we point out that neither party disputes the validity of the HSN/QVC Agreement, which included the arbitration clause. Instead, the issue in this matter arises from an arbitrability dispute that necessitates the two-step inquiry we outlined in *Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96 (4th Cir. 2012). "First, we determine *who* decides whether a particular dispute is arbitrable: the arbitrator or the court. Second, if we conclude that the court is the proper forum in which to adjudicate arbitrability, we then decide *whether* the dispute is, in fact, arbitrable. We review de novo the district court's ruling as to both prongs." *Id.* at 101.

Under *Peabody*, we first must determine *who* decides whether Simply Wireless's claims are arbitrable: the arbitrator or the court. "While arbitration serves important public interests, an agreement to arbitrate—like any other contract—is fundamentally about private choice." *Carson v. Giant Food, Inc.*, 175 F.3d 325, 328 (4th Cir. 1999). Thus, consistent with arbitration's contractual nature, parties may choose "to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (internal quotation marks omitted). However, because empowering an arbitrator to determine arbitrability in the first instance "cuts against the normal rule" that arbitrability disputes are for the court to resolve, "a court must find by 'clear and unmistakable' evidence that the parties have chosen to give arbitrability questions to an arbitrator." *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 671 n.1 (4th Cir. 2016) (internal alterations omitted) (quoting *Rent-A-Ctr., W., Inc.*, 561 U.S.

8

at 69 n.1); *see also AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). "The clear and unmistakable standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice." *Peabody*, 665 F.3d at 102 (internal quotation marks omitted).

In this case, the parties agreed to submit "[a]ny claims or controversies . . . arising out of or relating to this Agreement . . . to binding arbitration." S.J.A. 514. T-Mobile argues that this contractual language evinces the parties' clear and unmistakable intent to submit all arbitrability disputes to an arbitrator. We disagree.

In *Carson v. Giant Food., Inc.*, we rejected an almost identical argument from a party seeking arbitration, holding that "broad arbitration clauses that generally commit all interpretive disputes 'relating to' or 'arising out of' the agreement *do not* satisfy the clear and unmistakable test." 175 F.3d at 330 (emphasis added). In so doing, we concluded that "if contracting parties wish to let an arbitrator determine the scope of his own jurisdiction, they must indicate that intent in a clear and specific manner. Expansive general arbitration clauses will not suffice to force the arbitration of arbitrability disputes." *Id.* Thus, contrary to T-Mobile's contention, the parties' commitment to arbitrate all disputes "arising out of" or "relating to" the HSN/QVC Agreement does not delegate questions of arbitrability to the arbitrator.

T-Mobile further argues that even if the "arising out of" and "relating to" language did not clearly and unmistakably delegate questions of arbitrability to the arbitrator, the

9

arbitrator—not the court—should resolve questions of arbitrability because the HSN/QVC Agreement incorporates JAMS Rules, which empower an arbitrator to resolve arbitrability disputes. In particular, Rule 11(b) of the JAMS Comprehensive Arbitration Rules & Procedures (effective July 1, 2014) provides that:

> Jurisdictional and *arbitrability disputes*, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . *shall be submitted to and ruled on by the Arbitrator.* The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

J.A. 84 (emphasis added). The question, therefore, is whether the parties' express incorporation of JAMS Rules constitutes clear and unmistakable evidence of the parties' intent to delegate to the arbitrator questions of arbitrability.

This Court has not yet addressed this question. However, two circuits have specifically addressed this question and both have concluded that the incorporation of JAMS Rules constitutes "clear and unmistakable evidence" of the parties' intent to delegate questions of arbitrability to the arbitrator. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1284 (10th Cir. 2017) ("[W]e conclude that by incorporating the JAMS Rules into the Agreement, [the parties] clearly and unmistakably agreed to submit arbitrability issues to an arbitrator");[4] *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546

---

[4] Some circuits have asserted that in *Riley Mfg. Co. v. Anchor Glass Container Corp.,* 157 F.3d 775 (10th Cir. 1998), the Tenth Circuit held that the incorporation of arbitral rules delegating arbitrability disputes to an arbitrator is *not* clear and unmistakable evidence of the parties' agreement to arbitrate arbitrability. *See, e.g., Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (citing *Riley,* 157 F.3d at 780); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009). However, the Tenth Circuit subsequently clarified that *Riley* did not so hold because "the version of (Continued)

10

(5th Cir. 2016) (same). Moreover, other circuits have concluded that the incorporation of arbitral rules substantively identical to those found in JAMS Rule 11(b) constitutes clear and unmistakable evidence of the parties' intent to arbitrate arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (holding that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability"); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (same); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) (same); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332–33 (11th Cir. 2005) (same); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (same); *Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 207–08 (D.C. Cir. 2015) (holding that the parties' incorporation of UNCITRAL Arbitration Rules constitutes clear and unmistakable evidence that the parties intended for an arbitrator to decide issues of arbitrability); *Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 473–74 (1st Cir. 1989) (holding that the parties' agreement to have all disputes resolved according to the International Chamber of Commerce's Rules of Arbitration, in which the arbitrator has the power to determine her own jurisdiction, was clear and unmistakable evidence of the parties' intent to arbitrate arbitrability).

---

the AAA Rules that was incorporated into the agreement did *not* include a provision concerning the arbitration of arbitrability." *Belnap*, 844 F.3d at 1284. As a result, the Tenth Circuit stated, "*Riley* does not guide, much less control, our analysis regarding the significance of the Agreement's incorporation of the JAMS Rules." *Id.*

We agree with our sister circuits and therefore hold that, in the context of a commercial contract between sophisticated parties, the explicit incorporation of JAMS Rules serves as "clear and unmistakable" evidence of the parties' intent to arbitrate arbitrability. Because the JAMS Rules expressly delegate arbitrability questions to the arbitrator, the district court erred in deciding whether Simply Wireless's claims fall within the scope of the parties' arbitration agreement.

Simply Wireless nevertheless argues that allowing the arbitrator to resolve whether its claims are subject to arbitration under the HSN/QVC Agreement—an agreement that Simply Wireless maintains is unrelated to the claims asserted in its complaint—would mean that "every arbitration demand, no matter how frivolous, must automatically be submitted to arbitration and placed in the hands of a fee-based arbitrator whose financial self-interest mitigates [sic] in favor of retaining the dispute." Reply Br. at 5–6. We disagree.

In *Local No. 358, Bakery & Confectionary Workers Union v. Nolde Bros., Inc.*, 530 F.2d 548 (4th Cir. 1975), *aff'd*, 430 U.S. 243 (1977), this Court explained that a district court must give effect to a contractual provision clearly and unmistakably delegating questions of arbitrability to an arbitrator, "unless it is clear that the claim of arbitrability is wholly groundless." *Id.* at 553 (quoting 48 Am. Jur. 2d *Labor and Labor Relations* § 1257).[5] This so-called "wholly groundless" exception accords with the

---

[5] Several of our sister circuits also have adopted the "wholly groundless" exception. *See Qualcomm*, 466 F.3d at 1371 ("If . . . the court concludes that the parties to the agreement did clearly and unmistakably intend to delegate the power to decide arbitrability to an (Continued)

principles set forth in Federal Rule of Civil Procedure 11(b) that parties should not file a motion with a court—such as a motion to compel arbitration—that is "being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," or that is based on frivolous claims, defenses, or other legal contentions. Thus, contrary to Simply Wireless's contention, a district court need not, and should not, enforce a delegation provision when a party's assertion that a claim falls within an arbitration clause is frivolous or otherwise illegitimate. *See, e.g., Douglas*, 757 F.3d at 464 (refusing to enforce delegation provision contained in checking account agreement between defendant-bank and plaintiff, where plaintiff—years after closing the checking account—brought unrelated tort action against the bank).

Here, when the district court decided to dismiss Simply Wireless's complaint in favor of arbitration on grounds that its claims fell within the scope of the HSN/QVC Agreement's arbitration clause, the court necessarily had to find that T-Mobile's assertion of arbitrability was *not* frivolous or otherwise illegitimate. And Simply Wireless has not

---

arbitrator, then the court should perform a second, more limited inquiry to determine whether the assertion of arbitrability is wholly groundless." (internal quotation marks omitted)); *Douglas v. Regions Bank*, 757 F.3d 460, 464 (5th Cir. 2014) ("[E]ven *if* there is a delegation provision (step one), the court must ask whether the averment that the claim falls within the scope of the arbitration agreement is wholly groundless (step two)."); *see also Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 511 (6th Cir. 2011) ("[E]ven where the parties expressly delegate to the arbitrator the authority to decide the arbitrability of the claims related to the parties' agreement, this delegation applies only to claims that are at least *arguably* covered by the agreement."). *But see Jones v. Waffle House*, 866 F.3d 1257, 1269 (11th Cir. 2017) (declining to adopt the wholly groundless approach); *Belnap*, 844 F.3d at 1286 (same).

argued, either below or on appeal, that T-Mobile's assertion of arbitrability is "wholly groundless." Accordingly, we have no basis to disregard the parties' clear and unmistakable intent to delegate questions of arbitrability to the arbitrator. [6]

## III.

In sum, we hold that when, as here, two sophisticated parties expressly incorporate into a contract JAMS Rules that delegate questions of arbitrability to an arbitrator, then that incorporation constitutes the parties' clear and unmistakable intent to let an arbitrator determine the scope of arbitrability. Therefore, the district court in this case erred when it determined the arbitrability of Simply Wireless's claims. Nevertheless, we affirm the district court's dismissal of the complaint; but, we do so on the alternate grounds of allowing the arbitrator to resolve all arbitrability disputes.

*AFFIRMED*

---

[6] Simply Wireless has raised several other arguments in its effort to resist arbitration, including (1) that T-Mobile has "implicitly conceded that arbitration is inapplicable, waived any right to arbitrate and/or is equitably estopped" from demanding arbitration based on T-Mobile's prior conduct before the Trademark Board; (2) arbitration cannot provide all of the relief sought in Simply Wireless's complaint; and (3) it was error for the district court to resolve the arbitrability issue without a jury trial or evidentiary hearing. Appellant's Br. at 21–38. Because we hold that Simply Wireless clearly and unmistakably intended for an arbitrator to resolve *all* arbitrability disputes, we need not—and thus do not—address the merits of those arguments.

FLOYD, Circuit Judge, dissenting:

My colleagues conclude that the incorporation of the JAMS Comprehensive Rules and Procedures ("JAMS Rules") into the parties' arbitration agreement is a clear and unmistakable delegation of the power to determine the threshold question of arbitrability to the arbitrator. I would hold that when, as here, the parties also include a separate provision addressing arbitrability, with reference to a statute that contemplates judicial resolution of the question, the parties have not clearly and unmistakably delegated power to decide this threshold question to the arbitrator. I would further hold that this dispute is not subject to binding arbitration because the dispute neither arises out of nor relates to the agreement containing the arbitration clause. Therefore, I respectfully dissent.

I.

On July 12, 2012, Simply Wireless and T-Mobile entered into an "Amended & Restated Limited Purpose Co-Marketing and Distribution Agreement for Equipment Sold th[r]ough HSN & QVC" (the "HSN/QVC Agreement"). S.J.A. 502. The Agreement provided that "[a]ny claims or controversies . . . arising out of or relating to this Agreement ("Dispute") shall be resolved by submission to binding arbitration," and that the "arbitration shall be administered pursuant to the JAMS Comprehensive Rules and Procedures then in effect." S.J.A. 514. Importantly, it also included a provision stating that "[n]otwithstanding any choice of law provision in this Agreement, the parties agree that the Federal Arbitration Act [("FAA")], 9 U.S.C. §§ 1–15, not state law, shall govern the arbitrability of all disputes under this Agreement" (the "FAA clause"). *Id.*

Though the JAMS Rules empower the arbitrator to resolve arbitrability disputes, the FAA contemplates judicial resolution of these questions. The JAMS Rules provide that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." J.A. 84. The FAA, by contrast, provides that, once a party petitions the court for an order directing arbitration, the "court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

The Supreme Court has made clear that the presumption in favor of arbitration does not apply to the question of "whether the parties have submitted a particular dispute to arbitration . . . ." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). To the contrary, the Supreme Court has created a presumption in favor of judicial determination of whether the dispute is arbitrable. *Id.* Allowing the courts to decide gateway questions of arbitrability "avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Id.* at 83–84. Therefore, "[u]nless the parties *clearly and unmistakably* provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (emphasis added) (citation

16

omitted); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." (internal quotation marks, citation, & alterations omitted)); *Va. Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113, 117 (4th Cir. 1993) ("[T]he general policy-based, federal presumption in favor of arbitration . . . is not applied as a rule of contract interpretation to resolve questions of the arbitrability of arbitrability issues themselves.").

With the presumption in favor of judicial determination of whether a dispute is arbitrable in mind, I would conclude that the parties have not clearly and unmistakably intended to commit the threshold question of arbitrability to the arbitrator. The parties conspicuously inserted a provision into the Agreement stating that the FAA would govern questions of arbitrability. This insertion is significant. To be sure, as the majority has cited, our sister circuits have held that incorporation of the JAMS Rules or other arbitral rules committing the question of arbitrability to the arbitrator is sufficient to show that the parties clearly and unmistakably intended to do so. *See, e.g.*, *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1284 (10th Cir. 2017); *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). But none of these cases dealt with an arbitration clause that directly addressed the question of arbitrability—separate from its incorporation of the JAMS Rules—by expressly stating that, notwithstanding any other choice of law provisions, the FAA would govern such questions.

17

My colleagues do not address the effect of the FAA clause on this question. Presumably, they would conclude that the FAA clause is inapposite, because it merely provides that the FAA, "not state law, shall govern the arbitrability of all disputes under this Agreement." S.J.A. 514. Although the JAMS Rules are not state law, I would conclude that the insertion of the FAA clause muddies the waters of my colleagues' analysis. One interpretation of the FAA clause may simply be that the arbitrator, in deciding questions of arbitrability, is bound to follow the FAA. But, in my view, an equally plausible interpretation is that, by separately stating that "the parties agree that the Federal Arbitration Act . . . shall govern the arbitrability of all disputes under this Agreement," the parties did not contemplate that the JAMS Rules would cover this important threshold question of arbitrability. S.J.A. 514. Ultimately, because the insertion of the FAA clause creates more than one reasonable interpretation of the parties' intent regarding who should decide the question of arbitrability, it cannot be said that the parties clearly and unmistakably intended to submit the question of arbitrability to the arbitrator.

To be clear, I do not disagree with my colleagues' decision to adopt the approach of our sister circuits that have held that "incorporating the JAMS Rules into" an arbitration agreement can "evidence[] a clear and unmistakable intent to delegate questions of arbitrability to an arbitrator." *Belnap*, 844 F.3d at 1279. Rather, I would conclude that, in this case, the additional clause mandating that the FAA govern the question of arbitrability is sufficient to call into question the conclusion that the parties clearly and unmistakably intended to put the question of arbitrability before the arbitrator.

18

For that reason, I would conclude that the question of arbitrability was properly before the court.

## II.

Having concluded that the question of arbitrability was properly before the court, I would hold that the district court erred in granting T-Mobile's motion to compel arbitration, because the dispute at issue neither arises out of nor relates to the HSN/QVC Agreement.

It is axiomatic that a "party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (internal quotation marks & citations omitted). Nevertheless, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Thus, the court "may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001) (internal quotation marks & citations omitted).

I would hold that such "positive assurance" clearly exists in this case. This Court has "consistently held that an arbitration clause encompassing all disputes 'arising out of or relating to' a contract embraces 'every dispute between the parties having a significant relationship to the contract regardless of the label attached to a dispute.'" *Wachovia*

*Bank, Nat'l Ass'n v. Schmidt*, 445 F.3d 762, 768 (4th Cir. 2006) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996)); *see also Long*, 248 F.3d at 316 ("[A] broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." (citation omitted)).

Here, a "significant relationship" between Simply Wireless's claims and the HSN/QVC Agreement does not exist. A court's resolution of Simply Wireless's claims will require no inquiry into the Agreement's terms, nor even knowledge of the Agreement's existence." *See Wachovia*, 445 F.3d at 768 (holding that the dispute was not arbitrable in part because "a court's resolution of the . . . claims [would] require no inquiry into the Note's terms, nor even knowledge of the Note's existence."). Simply Wireless's claims—which are based on T-Mobile's alleged wrongful use of the SIMPLY PREPAID trademark—do not derive from the relationship created by the HSN/QVC Agreement. The dispute would have arisen even if the Agreement did not exist, and the Court would have no need to look at the terms of the Agreement to determine the parties' trademark rights.

T-Mobile argues that the dispute relates to the HSN/QVC Agreement because "T-Mobile's defense, among others, is that this is a T-Mobile trademark, that the mark is subject to the Agreement's protections, and that the Agreement prevents Simply Wireless from using or challenging the mark." Appellee's Br. 26–27. But this argument requires the Court to accept as true the assertion that the mark belongs to T-Mobile, which is at

20

the very heart of the dispute. And although Simply Wireless certainly agreed that the marks registered to T-Mobile were the property of T-Mobile, and any dispute arising from or relating to Simply Wireless's use of T-Mobile's registered marks in connection with the HSN/QVC Agreement would be subject to arbitration, it does not follow that Simply Wireless agreed to arbitrate all disputes arising from T-Mobile's alleged wrongful use of Simply Wireless's trademarks.

T-Mobile also argues that the dispute relates to the HSN/QVC Agreement because Simply Wireless's factual allegations demonstrating T-Mobile's willfulness and knowledge related to the parties' business dealings, through which T-Mobile became aware of Simply Wireless's extensive use of the mark, and that those dealings were a result of the HSN/QVC Agreement. J.A. 120–21 ¶¶ 42–43; *see J.J. Ryan & Sons*, *Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 319 (4th Cir. 1988) (the court must determine whether the "factual allegations underlying the claim are within the scope of the arbitration clause"). However, the Amended Complaint also alleged that Simply Wireless's use of the SIMPLY PREPAID trademark was well known to others in the industry, including T-Mobile, because Simply Wireless has used it extensively since 2002. J.A. 109 ¶ 19. Thus, the Amended Complaint did not allege that T-Mobile's knowledge of Simply Wireless's trademark arose solely because of the parties' business relationship under the HSN/QVC Agreement.

In short, the Agreement—which was, by name, a "Limited Purpose" agreement—related only to T-Mobile's and Simply Wireless's co-marketing ventures. It bears no significant relationship to Simply Wireless's trademark infringement claims, which arose

21

out of the competitive relationship between the parties. Therefore, I would hold that this dispute is not subject to mandatory arbitration and should proceed on the merits in the district court.

## III.

Because I conclude that judicial resolution of the question of arbitrability was proper, I respectfully dissent.