**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1328

BERKELEY COUNTY SCHOOL DISTRICT,

Plaintiff – Appellee,

v.

HUB INTERNATIONAL LIMITED; HUB INTERNATIONAL MIDWEST LIMITED,

Defendants – Appellants,

and

KNAUFF INSURANCE AGENCY, INC.; BRANTLEY THOMAS; HUB INTERNATIONAL SOUTHEAST,

Defendants.

Appeal from the United States District Court for the District of South Carolina, at Charleston.  David C. Norton, District Judge.  (2:18-cv-00151-DCN)

Argued:  December 12, 2024                    Decided:  March 7, 2025

Before KING, GREGORY, and RUSHING, Circuit Judges.

Reversed and remanded by published opinion.  Judge Rushing wrote the opinion, in which Judge King and Judge Gregory joined.

**ARGUED:** Michael Gregory Pattillo, Jr., MOLOLAMKEN LLP, Washington, D.C., for Appellants.  Phillip Donald Barber, RICHARD A. HARPOOTLIAN, P.A., Columbia, South Carolina, for Appellee.  **ON BRIEF:** John A. Massalon, WILLS MASSALON & ALLEN LLC, Charleston, South Carolina; Thomas J. Wiegand, MOLOLAMKEN LLP, Chicago, Illinois, for Appellants.    Richard A. Harpootlian, RICHARD A. HARPOOTLIAN, P.A., Columbia, South Carolina; Joshua S. Whitley, SMYTH WHITLEY, LLC, Charleston, South Carolina; Jeffrey A. Breit, BREIT BINIAZAN, PC, Virginia Beach, Virginia, for Appellee.

————————

RUSHING, Circuit Judge:

The district court has thrice denied motions to compel arbitration of this case, filed by defendants HUB International Ltd. and HUB International Midwest Ltd. (collectively, HUB). We vacated the two prior denials and now we reverse the third. After the district court determined that the parties formed enforceable agreements to arbitrate, which delegate arbitrability questions to the arbitrator, the court should have granted the motion to compel. By proceeding further to decide whether this dispute falls within the scope of those agreements, the district court erroneously undertook a task the parties had reserved for the arbitrator. Accordingly, we reverse the district court's judgment and remand with instructions to compel arbitration.

I.

In 2018, the Berkeley County School District[1] sued several defendants, including HUB, alleging claims arising from insurance policies and related services that defendants provided to Berkeley Schools. HUB moved to compel arbitration pursuant to brokerage service agreements (BSAs) dated in 2002, 2003, 2005, 2006, 2009, and 2011. The district court denied that motion, and HUB appealed. We reversed, holding that the district court overlooked material factual disputes regarding the making of any agreement, and remanded for the district court to conduct a trial under Section 4 of the Federal Arbitration Act (FAA), 9 U.S.C. § 4. *See Berkeley Cnty. Sch. Dist. v. HUB Int'l, Ltd.*, 944 F.3d 225, 241 (4th Cir. 2019) (*Berkeley I*).

---

[1] The Berkeley County School Board of Trustees filed the original complaint. An amended complaint substituted the school district as the proper plaintiff.

3

On remand, the district court conducted a bench trial, after which it again denied HUB's motion to compel arbitration. The court found no meeting of the minds between Berkeley Schools and HUB concerning the 2006, 2009, and 2011 BSAs. HUB disclaimed any further reliance on the arbitration agreement in the 2005 BSA. As for the 2002 and 2003 BSAs, the district court concluded that our prior decision precluded it from considering whether those agreements required the parties to arbitrate. HUB appealed only the court's ruling on the 2002 and 2003 BSAs. We vacated the judgment regarding those BSAs, explaining that new evidence produced at trial liberated the district court from the portion of our prior decision addressing the 2002 and 2003 BSAs. *See Berkeley Cnty. Sch. Dist. v. HUB Int'l Ltd.*, No. 21-1691, 2022 WL 17974626, at *2 (4th Cir. Dec. 28, 2022) (*Berkeley II*).

After the second remand, Berkeley Schools filed a Second Amended Complaint. In that complaint, Berkeley Schools alleged that, although the validity of the 2002 and 2003 BSAs "was questionable," HUB's predecessor "performed the services and invoiced the fees described" in those BSAs, which Berkeley Schools paid, and "the arrangement was commercially reasonable." J.A. 36–37. The 2002 and 2003 BSAs include identical arbitration provisions, which state:

> All disputes, claims or controversies relating to this Agreement, or the services provided, which are not otherwise settled, shall be submitted to a panel of three arbitrators and resolved by final and binding arbitration, to the exclusion of any courts of laws, under the commercial rules of the American Arbitration Association.

J.A. 246 ¶ 4.4, 251 ¶ 4.4. HUB again moved to compel arbitration pursuant to the 2002 and 2003 BSAs.

4

The district court again denied HUB's motion to compel. At the outset, the court found that Berkeley Schools had conceded the 2002 and 2003 BSAs were valid and enforceable contracts, which the parties constructively ratified despite mistakes regarding signatory authority. Examining the arbitration provisions in the BSAs, the court noted that they incorporate the commercial rules of the American Arbitration Association (AAA), which empower the arbitrator to rule on arbitrability disputes. As the district court observed, other circuits have held that incorporating the AAA commercial rules into an arbitration clause evinces the parties' intent to delegate arbitrability questions to the arbitrator. The district court accordingly concluded that the BSAs assign to the arbitrator, not the court, questions of arbitrability, including whether a particular dispute falls within the scope of the arbitration clause. Despite that conclusion, the district court went on to assess for itself "whether the facts alleged in the operative complaint fall within the arbitration provisions in the 2002 and 2003 BSAs." *Berkeley Cnty. Sch. Dist. v. HUB Int'l Ltd.*, No. 2:18-cv-00151-DCN, 2024 WL 1349226, at *18 (D.S.C. Mar. 30, 2024). The court ultimately concluded that "the conduct at issue . . . did not arise from" the 2002 and 2003 BSAs, *id.* at *20, and so denied HUB's motion to compel arbitration of any claims pursuant to those agreements.

HUB appealed. We have jurisdiction to hear an immediate appeal from the denial of a motion to compel arbitration. *See* 9 U.S.C. § 16(a). Our review is de novo. *See Berkeley I*, 944 F.3d at 233.

5

II.

"Under the [FAA], arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *see* 9 U.S.C. § 2 (providing that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). Accordingly, a party aggrieved by another's refusal to honor an arbitration agreement may petition a federal district court for an order enforcing the agreement, that is, "directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

In their contracts, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Henry Schein*, 139 S. Ct. at 529 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70.

Parties to a contract thus may find themselves disagreeing not only about (1) the merits of their dispute and (2) whether they agreed to arbitrate the merits but also about (3) "who should have the primary power to decide" whether they agreed to arbitrate the dispute—an arbitrator or a court. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995) (emphasis removed). Resolution of this third question, like the others, is a

6

matter of contract.  *See id.* at 943 ("[T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter.").  If the parties' contract delegates gateway arbitrability questions to an arbitrator, then a court must enforce that delegation.  "In those circumstances, a court possesses no power to decide the arbitrability issue."  *Henry Schein*, 139 S. Ct. at 529.

Berkeley Schools and HUB disagree about the merits of this lawsuit and about whether the arbitration provisions in the 2002 and 2003 BSAs require them to arbitrate any part of it.  But they agree that their contracts assign an arbitrator, not a court, responsibility for deciding disputes about the arbitrability of any claim.  In our view, that delegation resolves this appeal.

## A.

"Before referring a dispute to an arbitrator, . . . the court determines whether a valid arbitration agreement exists."  *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1193 (2024) (internal quotation marks and brackets omitted).  The arbitration agreement at issue here is the delegation of arbitrability questions to the arbitrator.  *See Rent-A-Center*, 561 U.S. at 71–72.  The challenge to formation of that agreement, however, applies equally to the whole BSA.  *See Coinbase*, 144 S. Ct. at 1194; *Berkeley I*, 944 F.3d at 234 n.9 ("[P]rovisions requiring the arbitration of arbitrability questions do not . . . preclude a court from deciding that a party never made an agreement to arbitrate *any* issue (which would necessarily encompass an arbitrability issue).").  "[O]rdinary state-law principles that govern the formation of contracts" apply.  *First Options*, 514 U.S. at 944.

7

The district court found that, despite previous disagreements, Berkeley Schools and HUB both now "accept[]" that the 2002 and 2003 BSAs "are valid and therefore enforceable." *Berkeley Cnty. Sch. Dist.*, 2024 WL 1349226, at \*5 n.14 (internal quotation marks omitted). As the district court explained, Berkeley Schools "unambiguously state[d] that it does not contest that the 2002 and 2003 [BSAs] were commercially reasonable and that both parties performed them without complaint, which constituted constructive ratification." *Id.*

On appeal, Berkeley Schools does not contest this conclusion or mount any further challenge to the formation or validity of the BSAs. Accordingly, we accept the parties' consensus that the 2002 and 2003 BSAs—and the arbitration agreements therein—are enforceable contracts.

B.

We next ask whether the arbitration agreements in fact delegate arbitrability questions to an arbitrator. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options*, 514 U.S. at 944 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *see also Va. Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113, 117 (4th Cir. 1993) ("[T]he general policy-based, federal presumption in favor of arbitration . . . is not applied as a rule of contract interpretation to resolve questions of the arbitrability of arbitrability issues themselves."). "The 'clear and unmistakable' standard is exacting, and the presence of an expansive arbitration clause, without more, will not

8

suffice." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012).

The district court concluded that the arbitration provisions of the 2002 and 2003 BSAs clearly and unmistakably delegated "the question of arbitrability . . . to the arbitrator." *Berkeley Cnty. Sch. Dist.*, 2024 WL 1349226, at *15; *see also id.* at *8 ("[T]he court next considers whether the parties agreed to a delegation clause, ultimately finding that they have.").  As the district court explained, the arbitration provisions incorporate the AAA commercial rules, which provide that the arbitrator "'shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.'"  *Id.* at *14 n.24 (quoting AAA Commercial Arbitration Rules, R-7(a) (amended Oct. 1,  2013)).  Although this Court has never decided the question,[2] other circuits have held that an arbitration provision's incorporation of the AAA commercial rules is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court.[3]  Finding those decisions persuasive, the district court concluded that, by incorporating the AAA commercial rules into the

---

[2] In prior appeals of this case, we acknowledged that the arbitration provisions incorporate the AAA commercial rules but did not opine on whether that incorporation is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.  *See Berkeley I*, 944 F.3d at 234 n.9; *Berkeley II*, 2022 WL 17974626, at *2.

[3] *See, e.g.*, *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

arbitration provisions of the BSAs, Berkeley Schools and HUB agreed to arbitrate arbitrability.

Neither party challenges this holding on appeal. HUB embraces it, and Berkeley Schools assures us we "can assume the [arbitration] clause delegates arbitrability." Resp. Br. 10 n.3. Therefore, as we did with the formation of a valid contract, we accept the parties' consensus that they agreed to arbitrate arbitrability in the 2002 and 2003 BSAs.

C.

Having determined that the parties formed a valid arbitration contract in which they agreed to arbitrate arbitrability, all that remains for a court to do is enforce that delegation agreement according to its terms. The parties debate whether the arbitration provisions of the 2002 and 2003 BSAs govern any claim in this lawsuit—in the words of the contracts, whether any of the claims "relat[e] to" those BSAs "or the services provided." J.A. 246 ¶ 4.4, 251 ¶ 4.4. But "whether their arbitration agreement applies to th[is] particular dispute" is a "threshold arbitrability question" that the parties have reserved for the arbitrators, not a court. *Henry Schein*, 139 S. Ct. at 527.

The district court erred, therefore, when it proceeded to decide for itself whether the arbitration provisions of the 2002 or 2003 BSAs apply to any claims in this case. "When the parties' contract delegates the arbitrability question to an arbitrator," a court "possesses no power to decide the arbitrability issue," "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* at 529.

In an attempt to overcome this conclusion, Berkeley Schools advances five main arguments. None is persuasive.

10

First, Berkeley Schools contends HUB waived any reliance on the delegation of arbitrability by failing to raise the argument on its first appeal to this Court. That's incorrect. In its first motion to compel arbitration, HUB argued that any question of arbitrability must itself be resolved in arbitration. However, the district court did not decide that issue because it ruled that Berkeley Schools did not agree to any BSAs or arbitration provisions in the first place. HUB therefore had no occasion to press the delegation issue on appeal from the district court's first order denying arbitration and so did not waive the argument.

Second, Berkeley Schools asserts that HUB's argument contradicts our decision in *Berkeley II*. It does not. In *Berkeley II*, we vacated the district court's refusal to consider whether the 2002 and 2003 BSAs required Berkeley Schools to arbitrate. As we explained, the trial evidence freed the district court from the law of the case regarding the relevance of the 2002 and 2003 BSAs. We clarified, however, that our decision did not opine on "whether the parties must arbitrate the question of arbitrability," which was an open issue for the district court to consider on remand. *Berkeley II*, 2022 WL 17974626, at * 2. HUB's position on that issue does not contravene our prior decision.

Third, Berkeley Schools argues that, by their terms, the 2002 and 2003 BSAs terminated before this dispute arose, and the expiration or termination of a contract is "a question of . . . formation" for the court to decide, "not [a question of] the breadth or scope of a particular contractual term." Resp. Br. 42. That is backwards. A court must be satisfied that the parties formed a contract before enforcing it. *See Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020). When, as here, the court is satisfied that the parties

11

formed a contract to delegate to an arbitrator any question about whether a particular claim is subject to their arbitration agreement, the court must enforce that contract, which is severable from the remainder of the arbitration agreement. *Rent-A-Center*, 561 U.S. at 71–72. Disputes about whether the arbitration agreement terminated before the claim arose, or whether an expired agreement nevertheless covers a claim, are questions of contract duration and scope, not formation. Berkeley Schools argues that "no agreement to arbitrate the dispute has been formed unless the dispute arises under the expired contract." Resp. Br. 42. But whether a dispute "arises under the . . . contract" is a quintessential scope question. *See*, *e.g.*, *Mey*, 971 F.3d at 292. The district court similarly went astray when it reasoned that "whether the parties agreed to arbitrate *this dispute*" presented a question of contract formation rather than arbitrability. *Berkeley Cnty. Sch. Dist.*, 2024 WL 1349226, at *15 (emphasis added). After all, "whether the[] arbitration agreement applies to the particular dispute" is "the threshold arbitrability question." *Henry Schein*, 139 S. Ct. at 527. One might argue that a court should not enforce a delegation clause in an agreement that an arbitrator might later find has expired and does not apply to the asserted postexpiration claims. The Supreme Court has acknowledged this type of conundrum, however, and has resolved it in favor of the separate enforceability of delegation provisions. *See Rent-A-Center*, 561 U.S. at 72; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448–449 (2006).

Fourth, Berkeley Schools would have us affirm the district court's analysis that the conduct alleged in the complaint does not arise under the 2002 or 2003 BSAs based on *Litton Financial Printing Division, Litton Business Systems, Inc. v. N.L.R.B.*, 501 U.S. 190

(1991). *Litton* identifies circumstances in which a "postexpiration grievance can be said to arise under the contract." *Id.* at 205–206. By this argument, Berkeley Schools would have us ignore the delegation agreement entirely and plow ahead with deciding for ourselves whether the arbitration provisions of the 2002 and 2003 BSAs apply to any claims in this case. We have no authority to do so. *See Henry Schein*, 139 S. Ct. at 529. *Litton*, like the other cases on which Berkeley Schools relies, involved an arbitration provision that did not delegate threshold arbitrability questions to an arbitrator. *See Litton*, 501 U.S. at 208–209; *Va. Carolina Tools*, 984 F.2d at 117; *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 759 (D.C. Cir. 1988). That makes all the difference.

Fifth and finally, Berkeley Schools warns that our decision will mean, "whenever there was an arbitration agreement with a delegation provision, any dispute between the parties to the expired agreement is subject to arbitration for all time," because a court will be unable to deny a motion to compel on the ground that the dispute lacks "any relationship to the expired agreement." Resp. Br. 59–60. The concern appears to be that parties will make frivolous motions to compel arbitration under expired agreements unrelated to the claims at issue. Yet binding precedent already requires a court to enforce an agreement to send arbitrability questions to an arbitrator even if the court considers the argument that the arbitration agreement applies to the particular dispute to be wholly groundless. *See Henry Schein*, 139 S. Ct. at 528. And as the Supreme Court has explained, "[a]rbitrators can efficiently dispose of frivolous cases by quickly ruling that a claim is not in fact arbitrable." *Id.* at 531. Under certain circumstances, arbitrators may even "respond to frivolous arguments for arbitration by imposing fee-shifting and cost-shifting sanctions,"

13

which will help deter and remedy frivolous motions to compel arbitration. *Id.* For these reasons, we find Berkeley Schools' concerns unfounded.

III.

The district court erred when it denied HUB's motion to compel arbitration based on its own assessment of whether the parties' arbitration agreements in the 2002 and 2003 BSAs apply to this dispute. After concluding that the parties formed a valid agreement to delegate arbitrability questions to an arbitrator, the court should have compelled arbitration of the parties' dispute about whether any claims in this case are subject to arbitration under those contracts. Accordingly, we reverse the district court's judgment and remand with instructions to compel arbitration of this threshold arbitrability question in accordance with the parties' agreement.

*REVERSED AND REMANDED*