Affirmed by published opinion. Judge Wynn wrote-the majority opinion, in which Judge Harris joined. Judge'Floyd wrote a dissenting opinion. WYNN, Circuit Judge: Plaintiff Simply Wireless, Inc. (“Simply Wireless”) appeals from an order of the United States District Court for the Eastern District, of Virginia dismissing its complaint against Defendants T-Mobile US,’ Inc. and T-Mobile USA, Inc. (collectively, “T-Mobile”). Upon determining that the parties’ business relationship was governed by a written agreement containing a mandatory arbitration clause, the district court went on to determine that the scope of that arbitration clause included all of Simply Wireless’s claims against T-Mobile. We conclude that the district court erred in determining the scope of the parties’ arbitration clause, as the parties clearly and unmistakably intended for an arbitrator—not the court—to resolve all arbitra-bility disputes. Nonetheless, because the parties intended for an arbitrator to resolve all arbitrability disputes, the district court’s ultimate dismissal of Simply Wireless’s complaint in favor of arbitration was proper. Accordingly, we affirm the district court’s dismissal on alternate grounds. I. We review a grant of a motion to dismiss a complaint by taking the facts in the light most favorable to the plaintiff. Cruz v. Maypa, 773 F.3d 138, 141 (4th Cir. 2014). Simply Wireless sells cellular telephone goods and services to consumers and provides advertising, marketing, and distribution services to other businesses in the telecommunications industry. Simply Wireless is the registered owner of multiple trademarks using the name SIMPLY WIRELESS.[1] According to the complaint, Simply Wireless is also the originator and owner of the trademark SIMPLY PREPAID in connection with the sale of cellular telephone goods and services. Since 2002, Simply Wireless has sold hundreds of thousands of prepaid phone cards in connection with the SIMPLY PREPAID trademark, and it has used that mark to promote and market the goods and services of other telecommunications providers. T-Mobile also provides cellular services. Although T-Mobile and Simply Wireless compete in the same industry, they have partnered on several projects since at least 2003. Pertinent to this appeal, on July 12, 2012, T-Mobile and Simply Wireless partnered on a project by executing a contract entitled “Amended & Restated Limited Purpose Co-Marketing and Distribution Agreement for Equipment Sold th[r]ough HSN & QVC” (the “HSN/QVC Agreement”). S.J.A. 502. The HSN/QVC Agreement allowed Simply Wireless “to use T-Mobile’s experience, Confidential Information, Marks[2] and goodwill to promote, market and sell T-Mobile’s Wireless Service and Equipment to Subscribers through [HSN and QVC] for various on-air promotions, ... subject to the terms and conditions of this Agreement.” Id. The HSN/QVC Agreement included several provisions protecting T-Mobile’s trademarks: 18.1. Marks. [Simply Wireless] acknowledges that the Marks, along with all Intellectual Property Rights associated therewith are the property of T-Mobile. [[Image here]] 18.5. Protection of T-Mobile Rights. [Simply Wireless] shall immediately notify T-Mobile of any infringement, misappropriation, or violation of any Marks and/or Intellectual Property Rights of T-Mobile ... that comes to [Simply Wireless’s] attention. [Simply Wireless] shall not infringe or violate, and shall me its best efforts to preserve and protect T-Mobile’s ... interest in, all such Marks and Intellectual Property Rights. S.J.A. 513-14 (emphasis added). It also included an arbitration clause that provided, in pertinent part: 19.1.1. Submission to Arbitration. Any claims or controversies ... arising out of or relating to this Agreement (“Dispute”) shall be resolved by submission to binding arbitration. The arbitration shall be administered and hearings shall be held in Seattle, Washington before a single neutral arbitrator from the offices of Judicial Arbitration & Mediation Services. The arbitration shall be administered pursuant to the JAMS■ Comprehensive Rules and Procedures then in effect.... Notwithstanding any choice of law provision in this Agreement, the parties agree that the Federal Arbitration Act, 9 U.S.C. §§ 1-15, not state law, shall govern the arbitrability of all disputes under this Agreement. S.J.A. 514 (emphasis added). Over two years after the execution of the HSN/QVC Agreement, in August and September 2014, T-Mobile filed several trademark applications with the United States Patent and Trademark Office (“USPTO”) to trademark SIMPLY PREPAID. At the same time, T-Mobile commenced use of SIMPLY PREPAID in connection with its products and services. In March 2015, Simply Wireless filed with the USPTO Trademark Trial and Appeal Board (the “Trademark Board”) a Notice of Opposition to all of T-Mobile’s SIMPLY PREPAID trademark applications. In response, T-Mobile' filed an answer and asserted counterclaims seeking cancellation of Simply Wireless’s various registrations of the SIMPLY WIRELESS trademark. During the subsequent proceedings before the Trademark Board, neither party demanded arbitration. Instead, both parties engaged in extensive discovery, with Simply Wireless producing over 30,000 pages of documents in response to discovery requests from T-Mobile. In October 2015, Simply Wireless brought this action in federal court, seeking relief on five grounds: (1) trademark infringement under Section 32 of the Lan-ham Act, 15 U.S.C. § 1114; (2) trademark infringement under Va. Code. Ann. § 59.1-92.12; (3) unfair competition, passing off, trade name infringement, trademark infringement, and false designation of origin under Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a); (4) common law trademark infringement, trade name infringement, unfair competition, and passing off under the common law of the Commonwealth of Virginia; and (5) trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Soon thereafter, T-Mobile filed a Notice of Intent to Seek Arbitration.[3] T-Mobile also moved to dismiss Simply Wireless’s complaint on two separate grounds: First, T-Mobile argued that, based upon provisions in the HSN/QVC Agreement, Simply Wireless’s failure to provide contractually required notice of its claims and to initiate arbitration in a timely manner warranted dismissal with prejudice under Federal Rule of Civil Procedure 12(b)(6). Second, and alternatively, T-Mobile argued that the HSN/QVC Agreement’s express incorporation of JAMS Comprehensive Rules and Procedures (“JAMS Rules”) “clearly and unmistakably” endowed an arbitrator—as. opposed to the court—with the authority to resolve all arbitrability disputes. t Accordingly, T-Mobile asked the district court to dismiss the case without prejudice for an arbitrator ■ to determine whether the dispute at issue fells within the scope of the HSN/QVC Agreement’s mandatory arbitration provision. • , In response, Simply Wireless principally argues, both below and now on appeal, that the various claims asserted in its.complaint neither “arise out of’ nor “relate to” the HSN/QVC Agreement. Therefore, according to Simply Wireless, its claims against T-Mobile are neither barred by the HSN/QVC Agreement nor subject to mandatory arbitration pursuant to the agreement.. On January 14, 2016, the district court issued a two-page order granting T-Mobile’s motion to dismiss Simply Wireless’s complaint. Notwithstanding'T-Mobile’s argument that the HSN/QVC Agreement expressly left questions of arbitrability to the arbitrator, the court concluded “that Plaintiffs claims are arbitrable' because they-fell within the scope of the [HSN/QVC Agreement],” and therefore dismissed the action without prejudice to allow the parties to pursue arbitration. J.A, 493. Simply Wireless timely appealed. II.. From the outset, we point out that neither party-disputes th’e validity of the HSN/QVC Agreement, which included the arbitration clause, Instead, the issue in this matter arises from an arbitrability dispute that necessitates the two-step inquiry we outlined in Peabody Holding Co. v. United Mine Workers of Am., Int’l Union, 665 F.3d 96 (4th Cir. 2012), “First, we determine who decides whether a particular dispute is arbitrable: the arbitrator or the court, Second, if we conclude that the court- is the proper forum in which to1 adjudicate arbitrability, we then decide whether the dispute is, in fact, arbitrable. We review de novo the district court’s ruling as to both prongs.” Id. at 101. Under Peabody, we first must-determine who decides whether Simply Wireless’s claims are arbitrable: the arbitrator or .the court. “While arbitration serves important public interests, an agreement to arbitrate—like any other contract—is fundamentally about private choice.” Carson v. Giant Food, Inc., 175 F.3d 325, 328 (4th Cir. 1999). Thus, consistent with arbitration’s contractual nature, parties may choose “to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.” Rent-A-Ctr., W., Inc. v. Jackson, 661 U.S. 63, 68-69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) (internal quotation marks omitted). However, because empowering an arbitrator to determine ar-bitrability in the first instance “cuts against the normal rule” that arbitrability disputes are for the court to resolve, “a court must find by ‘clear and unmistakable’ evidence that the parties have chosen to give arbitrability questions to an arbitrator.” Hayes v. Delbert Servs. Corp., 811 F.3d 666, 671 n.1 (4th Cir. 2016) (internal alterations omitted) (quoting Rent-A-Ctr., W., Inc., 561 U.S. at 69 n.1, 130 S.Ct. 2772); see also AT & T Techs., Inc. v. Commc’ns Workers of Am., 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (“Unless the parties clearly and unmistakably provide .otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.”). “The. clear and unmistakable standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice.” Peabody, 665 F.3d at 102 (internal quotation marks omitted). In this case, the parties agreed to submit “[a]ny claims or controversies ... arising out of or relating to this Agreement ... to binding arbitration.” S.J.A, 514. T-Mobile argues that this contractual language evinces the parties’ clear and unmistakable intent to submit all arbitrability disputes to an arbitrator. We disagree. In Carson v. Giant Food., Inc,, we rejected an almost identical argument from a party seeking arbitration, holding that “broad arbitration clauses that 'generally commit all interpretive disputes ‘relating to’ or ‘arising out of the agreement do not satisfy the eléar and unmistakable test.” 175 F.3d at 330 (emphasis added). In so doing, we concluded that “if contracting parties wish to let an arbitrator determine the scope of his own jurisdiction, they must indicate'that intent in a clear and specific manner. Expansive general arbitration clauses will not suffice to force the arbitration of arbitrability disputes.” Id. Thus, contrary to T-Mobile’s contention, the parties’ commitment to arbitrate all disputes “arising out of’ or “relating to” the HSN/QVC Agreement does not delegate questions of arbitrability to the arbitrator. T-Mobile further argues that even if the “arising out of’ and “relating to” language did not clearly and unmistakably delegate questions of arbitrability to the arbitrator, the arbitrator—not the court—should resolve questions of arbitrability because the HSN/QVC Agreement incorporates JAMS Rules, which empower an' arbitrator to resolve arbitrability disputes. In particular, Rule 11(b) of the JAMS Comprehensive Arbitration Rules & Procedures (effective July 1,2014) provides that: Jurisdictional and arbitrability disputes, including disputes over the formation; existence, validity, interpretation or scope of the agreement under which Arbitration is sought .,. shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues. as a preliminary matter. J.A. 84 (emphasis added). The question, therefore, is whether the parties’ express incorporation of JAMS Rules constitutes clear and unmistakable evidence of the parties’, intent to delegate to the arbitrator questions of arbitrability. . This Court has not yet addressed this question. However, two circuits have specifically addressed this question and both have concluded that the incorporation of JAMS Rules constitutes “clear and unmistakable evidence” of the parties’ intent to delegate questions of arbitrability to the arbitrator. See Belnap v. Iasis Healthcare, 844 F.3d 1272, 1284 (10th Cir. 2017) (“|W]e conclude that by incorporating the JAMS Rules into the Agreement, [the parties] clearly and unmistakably agreed to submit arbitrability issues to an arbitrator”);[4] Cooper v. WestEnd Capital Mgmt., L.L.C., 832 F.3d 534, 546 (5th Cir. 2016) (same). Moreover, other circuits 'have concluded that the incorporation of arbitral rules substantively identical to those found in JAMS Rule 11(b) constitutes clear and unmistakable evidence of the parties’ intent to arbitrate arbitrability. See Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (holding that “incorporation of the AAA rules constitutes clear - and unmistakable evidence that contracting parties agreed to arbitrate arbitrability”); Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009) (same); Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1373 (Fed. Cir. 2006) (same); Terminix Int’l Co. v. Palmer Ranch Ltd. P’ship, 432 F.3d 1327, 1332-33 (11th Cir. 2005) (same); Contec Corp. v. Remote Sol., Co., 398 F.3d 205, 208 (2d Cir. 2005) (same); Chevron Corp. v. Republic of Ecuador, 795 F.3d 200, 207-08 (D.C. Cir. 2015) (holding that the parties’ incorporation of UNCITRAL Arbitration Rules constitutes clear and unmistakable evidence that the parties intended for an arbitrator to decide issues of arbitrability); Apollo Comput., Inc. v. Berg, 886 F.2d 469, 473-74 (1st Cir. 1989) (holding that the parties’ agreement to have all disputes resolved according to the International Chamber of Commerce’s Rules of Arbitration, in which the arbitrator has the power to determine her own jurisdiction, was clear| and unmistakable evidence of the parties’ intent to arbitrate arbitrability). We agree with our sister circuits and therefore hold that, in the context of a commercial contract between sophisticated parties, the explicit incorporation of JAMS Rules serves as “clear and unmistakable” evidence of the parties’ intent to arbitrate arbitrability. Because the JAMS Rules expressly. delegate arbitrability questions to the arbitrator, the district court erred in deciding whether Simply Wireless’s claims fall within the scope of the parties’ arbitration agreement. Simply Wireless .nevertheless argues that allowing the arbitrator to resolve whether its claims are subject to arbitration under .the HSN/QVC Agreement—an agreement that Simply Wireless maintains is unrelated to the claims asserted in its complaint—would mean that “every arbitration demand, no matter.how frivolous, must automatically be submitted to arbitration and placed in the hands of a fee-based arbitrator whose financial self-interest mitigates [sic] in favor of retaining the dispute.” Reply Br. at 5-6. We disagree. In Local No. 358, Bakery & Confectionery Workers Union v. Nolde Bros., Inc., 530 F.2d 548 (4th Cir. 1975), aff'd, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), this Court explained that a district court must give effect to a contractual provision clearly and unmistakably delegating questions of arbitrability to an arbitrator, “unless it is clear that the claim of arbitrability is wholly groundless.” Id. at 553 (quoting 48 Am. Jur. 2d Labor and Labor Relations § 1257).[5] This so-called “wholly groundless” exception accords with the principles set forth in Federal Rule of Civil Procedure 11(b) that parties should not file a motion with a court—such as a motion to compel arbitration—that is “being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation,” or that is based on frivolous claims, defenses, or other legal contentions. Thus, contrary to Simply Wireless’s contention, a district court need not, and should not, enforce a delegation provision when a party’s assertion that a claim falls within an arbitration clause is frivolous or otherwise illegitimate. See, e.g., Douglas, 757 F.3d at 464 (refusing to enforce delegation provision contained in checking account agreement between defendant-bank and plaintiff, where plaintiff—years after closing the checking account—brought unrelated tort action against the bank). Here, when the district court decided to dismiss Simply Wireless’s complaint in favor of arbitration on grounds that its claims fell within the scope of the HSN/ QVC Agreement’s arbitration clause, the court necessarily had to find that T-Mobile’s assertion of arbitrability was not frivolous or otherwise illegitimate. And Simply Wireless has not argued, either below or on appeal, that T-Mobile’s assertion of arbitrability is “wholly groundless.” Accordingly, we have no basis to disregard the parties’ clear and unmistakable intent to delegate questions of arbitrability to the arbitrator.[6] III. In sum, we hold that when, as here, two sophisticated parties expressly incorporate into a contract JAMS Rules that delegate questions of arbitrability to an arbitrator, then that incorporation constitutes the parties’ clear and unmistakable intent to let an arbitrator determine the scope of arbitrability. Therefore, the district court in this case erred when it determined the arbitrability of Simply Wireless’s claims. Nevertheless, we affirm the district court’s dismissal of the complaint; but, we do so on the alternate grounds of allowing the arbitrator to resolve all arbitrability disputes. AFFIRMED . For elarity, all marks at issue in this case appear in capital letters (e.g., "SIMPLY WIRELESS”), while “Simply Wireless” refers to the plaintiff-appellant. . "Marks,” as defined in the HSN/QVC Agreement, include “[a]U service marks,' trademarks and trade names sublicensed to T-Mobile ... and all service marks, trademarks and' trade names owned by T-Mobile.” S J.A. 503. . T-Mobile also moved to suspend the ongoing proceedings before the Trademark Board pending the resolution of Simply Wireless’s action against T-Mobile in district court. The Trademark Board granted T-Mobile’s motion and has suspended the proceedings. . Some circuits have asserted that in Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775 (10th Cir. 1998), the Tenth Circuit held that the incorporation of arbitral rules delegating arbitrability disputes to an arbitrator is not clear and unmistakable evidence of the parties’ agreement to arbitrate arbitrability. See, e.g., Oracle Am., Inc. v. Myriad Grp. A.G., 724 F.3d 1069, 1074 (9th Cir. 2013) (citing Riley, 157 F.3d at 780); Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009). However, the Tenth Circuit subsequently clarified that Riley did not so hold because "the version of the AAA Rules that was incorporated into the agreement did not include a provision concerning the arbitration of arbitrability.” Belnap, 844 F.3d at 1284. As a result, the Tenth Circuit stated, “Riley does not guide, much less control, our analysis regarding the significance of the Agreement’s incorporation of the JAMS Rules.” Id. " . Several of our sister circuits also have adopted the “wholly groundless” exception. See Qualcomm, 466 F.3d at 1371 (“If ... the court concludes that the parties to the agreement did clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator, then the court should perform a second, more limited inquiry to determine whether the assertion of arbitrability is wholly groundless.” (internal quotation marks omitted)); Douglas v. Regions Bank, 757 F.3d 460, 464 (5th Cir. 2014) (“[E]ven if there is a delegation provision (step one), the court must ask whether the averment that the claim falls within the scope of the arbitration agreement is wholly groundless (step two).”); see also Turi v. Main St. Adoption Servs., LLP, 633 F.3d 496, 511 (6th Cir. 2011) ("[E]ven where the parties expressly delegate to the arbitrator the authority to decide the arbitrability of the claims related to the parties' agreement, this delegation applies only to claims that are at least arguably covered by the agreement.”). But see Jones v. Waffle House, 866 F.3d 1257, 1269 (11th Cir. 2017) (declining to adopt the wholly groundless approach); Belnap, 844 F.3d at 1286 (same). . Simply Wireless has raised several other arguments in its effort to resist arbitration, including (1) that T-Mobile has "implicitly conceded that arbitration is inapplicable, waived any right to arbitrate and/or is equitably estopped” from demanding arbitration based on T-Mobile’s prior conduct before the Trademark Board; (2) arbitration cannot provide all of the relief sought in Simply Wireless’s complaint; and (3) it was error for the district court to resolve the arbitrability issue without a jury trial or evidentiary hearing. Appellant’s Br. at 21-38. Because we hold that Simply Wireless clearly and unmistakably intended for an arbitrator to resolve all arbitrability disputes, we need not—and thus do not—address the merits of those arguments.